UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In the Matter of the**<br><br>**YELLOW LINE CASES**<br>**Arising out of the Events of January 12, 2015**<br><br>**LEAD CASE:** *Glover et al. v. WMATA*<br><br>**THIS DOCUMENT RELATES TO:**<br>**ALL CASES** | Civil Action No. 1:15-mc-989-TSC-GMH |

## WASHINGTON METROPOLITAN TRANSIT AUTHORITY'S CROSS-CLAIM AGAINST THE DISTRICT OF COLUMBIA

Defendant Washington Metropolitan Transit Authority (hereafter "WMATA"), by and through its undersigned counsel pursuant to Fed. R. Civ. P. 13, hereby files the instant cross-claim against Co-Defendant District of Columbia (hereafter the "District") concerning the actions of the District's Fire and Emergency Medical Services Department (hereafter "D.C. FEMS") on January 12, 2015.[1]  The grounds for this Cross-Claim are set forth below.

### A.   Introduction and Parties

1.   On January 12, 2015, while WMATA officials were responding to the emergency in the tunnel south of the L'Enfant Plaza Station, D.C. FEMS ignored the obligations that it agreed to undertake in responding to emergencies in WMATA's underground Metro Rail subway system and ignored the efforts of WMATA officials to communicate critical information to D.C. FEMS, including the fact that a train carrying passengers was disabled inside a tunnel that was filling with smoke.  As a result of D.C. FEMS's utter disregard for its duties in

---

[1] WMATA files this Cross-claim to comply with the Court's November 21, 2016 order, despite its election to file a Motion to Dismiss the Master Complaint. WMATA reserves its right to fully respond to the Master Complaint in the event that it is necessary and appropriate.

1

responding to such emergencies, Metro Rail passengers experienced injuries that were more severe than they otherwise would have been and the event ended in tragedy.

2. D.C. FEMS provides fire and emergency medical services to WMATA's Metro Rail system under a multi-jurisdictional agreement because WMATA does not have the capability of providing those services itself. Under the terms of that agreement, D.C. FEMS is required to assume control over any emergency response involving WMATA's Metro Rail tunnels within Washington, D.C. On January 12, 2015, when WMATA's Metrorail Train Number 302 became disabled in a Yellow Line Tunnel just south of L'Enfant Plaza, D.C. FEMS was dispatched to the scene. Instead of sending a senior fire official experienced in responding to emergencies within the WMATA underground, however, D.C. FEMS sent a battalion commander who lacked the necessary training and experience in responding to such emergencies. As a result of this error, the D.C. FEMS battalion commander failed to manage the response appropriately, including failing to establish a unified command structure, failing to coordinate with other agencies on scene, and delaying its response to passengers trapped on Train 302, thereby causing or contributing to or exacerbating the injuries to those passengers. Numerous such passengers have now asserted claims against WMATA relating to the events of January 12, 2015. In the event that WMATA is found liable for the claims of those persons, which liability WMATA expressly denies, WMATA asserts that the District, through D.C. FEMS, bears responsibility for some or all of those injuries as described more particularly herein.

3. On December 9, 2016, Plaintiffs filed a Master Complaint, asserting claims against the District of Columbia relating to the events of January 12, 2015.

4.      The claims asserted against WMATA include, among others, negligence, negligent maintenance and negligent response to the incident.

5.      This Cross-Claim relates to the emergency response to the January 12, 2015 incident, which, as explained below, was the sole responsibility of D.C. FEMS.

6.      WMATA is a multi-jurisdictional transit authority created by the WMATA Compact, and approved by Congress under Public Law 89-774. WMATA is a transit agency that provides rail, bus and special needs transportation for the Washington Metropolitan region.

7.      The District is a City, located in Washington, DC.

8.      In accordance with D.C. Code § 12-309, WMATA notified the District of its intention to assert a claim against it relating to the January 12, 2015 emergency response. A true and correct copy of the Notice of Claim under D.C. Code § 12-309 is attached hereto as Exhibit A.

### B.      Factual Background – Emergency Response within WMATA

9.      WMATA and the District of Columbia are Defendants in multiple lawsuits filed against them by persons claiming injuries as a result of an alleged electrical arcing event that occurred in the Metro Rail tunnel south of L'Enfant Plaza Station (hereafter "LEP") on January 12, 2015. Numerous persons have alleged that they experienced injuries of varying degrees of severity. One such person, Carol Glover, died allegedly as a result of her exposure to smoke on Train 302, which had entered the tunnel and become unable to move as a result of the loss of traction power.

10.     Because of the unique circumstances of WMATA, inasmuch as its service area includes the District of Columbia, Montgomery County, Prince George's County, Arlington County, Fairfax County, the City of Falls Church, the City of Fairfax, and the City of

Alexandria, as well as several federal properties and agencies, WMATA has entered into an agreement through the Metropolitan Council of Governments to appropriately manage emergency response and to ensure that such emergency response is coordinated in accordance with the standards embraced by the National Incident Management System ("NIMS").

11. NIMS is a "systematic, proactive approach to guide departments and agencies at all levels of government, nongovernmental organizations, and the private sector to work together seamlessly . . . to reduce loss of life, property and harm to the environment." NIMS provides for a Unified Command structure for "incidents involving multiple jurisdictions, a single jurisdiction with multiagency involvement, or multiple jurisdictions with multiagency involvement." (*See* http://www.fema.gov/national-incident-management-system.)

12. WMATA has entered into an agreement, entitled the "Metro Rail Transit – Fire/Rescue Emergency Procedures Policy Agreement," commonly referred to as the "Fire Chiefs' Agreement," with all of the area emergency response agencies for the eight jurisdictions within WMATA's service territory. A true and correct copy of the Fire Chiefs' Agreement is attached hereto as Exhibit B.

13. The Fire Chiefs' Agreement was created in the wake of the September 11, 2001 attacks to ensure that local agencies coordinated their responses to all types of emergency incidents in an appropriate and efficient manner. With respect to fire and smoke incidents, the understandings embodied within the Fire Chiefs' Agreement are of even greater importance because WMATA does not have its own fire department. It is a specific undertaking agreed to by the District so as to protect WMATA. Accordingly, WMATA is completely dependent and justifiably reliant upon its partner jurisdictions to provide fire and emergency medical services within the WMATA system. Further, WMATA relies on the training, experience, supervision

and expertise of the fire and emergency medical services of its partner jurisdictions in responding to emergencies within WMATA's underground environments.

14. The Fire Chiefs' Agreement constitutes direct and continuing contact between the District and WMATA.

15. Under the term of the Fire Chiefs' Agreement, WMATA is required to delegate Incident Command to the local fire department's senior commander as soon as that commander arrives on the scene. In the case of the District, this means that the D.C. FEMS' Battalion Commander or other senior D.C. FEMS official is required to assume command of any incident response to a fire or smoke event occurring within the WMATA subway tunnels. Once this official assumes command this person is the "Incident Commander." As the name implies, the fire department's on-site representative takes command of the emergency situation and response.

16. Upon arrival at the scene, the Incident Commander must establish a "Unified Incident Command," consisting of the senior on-site officials from all responding agencies. The senior Metro Transit Police Department official is WMATA's designated representative to the Unified Incident Command. The Incident Commander is in charge of the Unified Incident Command and all other agency representatives report to, and coordinate with, the Incident Commander from D.C. FEMS.

17. Unified Incident Command is essential to the coordination of the response by multiple agencies. Agency commanders from D.C. FEMS, Metropolitan Police, Metro Transit Police and any other responding agency (which could include federal agencies like the FBI or ATF) are physically located in an on-site command post, where they can communicate face to face, share information, develop strategies for the response, and relay information to their respective agency personnel on scene.

18.  As a result of the arrangement embodied in the Fire Chiefs' Agreement, D.C. FEMS has exercised exclusive control over the response to emergencies involving fire and/or smoke within its tunnels.

19.  Therefore, to the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on WMATA trains in the event of a fire-emergency situation, which WMATA expressly denies, D.C. FEMS owes a duty to WMATA and WMATA's passengers to assist, rescue and/or evacuate such passengers on WMATA trains in the event of such an emergency situation.  This delegated duty is further specified in the Fire Chiefs' Agreement between D.C. FEMS and WMATA.  Firefighters are specially trained to respond to incidents involving fire and smoke, whereas WMATA does not have any such specialized services of its own.  By virtue of the Fire Chiefs' Agreement, D.C. FEMS has accepted that duty to WMATA and WMATA's passengers.

C.  **Factual Background – Emergency Response Failures on January 12, 2015**

20.  On January 12, 2015, D.C. FEMS failed to follow the procedures in the Fire Chiefs' Agreement in numerous critical ways.  Most importantly, the Battalion Commander who was the senior D.C. FEMS official on site during the incident response failed to establish Unified Incident Command.  In fact, not only did he fail to establish Unified Incident Command, but he actively ignored the efforts of the Metro Transit Police's Deputy Chief to report to that Unified Incident Command and to provide critical information to the Incident Commander that would have facilitated the emergency response.

21.  By failing to establish Unified Incident Command, the D.C. FEMS Incident Commander failed to ascertain that Train 302, loaded with passengers, was located inside a smoke-filled tunnel and that passengers required assistance.

22. By failing to establish Unified Incident Command, the D.C. FEMS Incident Commander failed to coordinate communication to FEMS and other personnel inside the LEP station.

23. The failure to establish Unified Incident Command became even more critical because of a problem with D.C. FEMS's emergency radio system that was reported to WMATA a few days before the January 12, 2015 events at LEP. WMATA had traced the problem to an above-ground communications facility belonging to the District, and had requested access to further investigate and remedy the problem. The District delayed providing access to this site for WMATA's technicians because, upon information and belief, it was not convenient for District officials to provide immediate access to a critical switching point to ensure that the District's own emergency radio system would function in the WMATA tunnels in the event of an emergency.

24. The District's delay in providing access to the radio communication site meant that the radio problem was not corrected prior to January 12, 2015, and D.C. FEMS reported problems with radio service within the LEP station during the incident.

25. The failure to establish Unified Incident Command resulted in substantial communications delays between command personnel outside the LEP station and the first responders inside the station. Instead of using the Metro Transit Police radios—which were working properly on January 12, 2015—the Incident Commander set up a messenger relay, relying on individuals to run in and out of the station relaying messages between command personnel and responders in the station. Had the Incident Commander established a Unified Incident Command, he would have been able to coordinate communications with Metro Transit

Police personnel—who had functioning two-way radios inside LEP—thereby efficiently and timely directing D.C. FEMS's responders and receiving feedback from those responders.

26. As a result of the failure to establish Unified Incident Command, the D.C. FEMS Incident Commander failed to learn the critical fact that passengers on Train 302 were inside the tunnel and that the tunnel and train were filling with smoke. The Metro Transit Police Deputy Chief tried to communicate this critical piece of information to the Incident Commander several times, and each time the Incident Commander rolled up his vehicle window and drove off instead of engaging a fellow agency senior official—who had been on scene for some time before D.C. FEMS arrived—in the exchange of critical information to coordinate the response.

27. As a result of the failure to establish Unified Incident Command, D.C. FEMS did not coordinate the deactivation of third-rail power with WMATA officials, thereby thwarting efforts by those officials to return Train 302 to LEP station to evacuate the passengers.

28. As a result of the failure to establish Unified Incident Command, D.C. FEMS delayed its response, resulting in a substantially longer exposure to smoke by passengers on Train 302, thereby exacerbating the nature and extent of each passenger's injuries.

29. As a result of the failure to establish Unified Incident Command, and the resulting delays in the response by FEMS, Carol Glover died, and other passengers experienced injury or exacerbation of injury.

30. The D.C. FEMS' Incident Commander was not adequately trained to assume command of a WMATA emergency in the underground subway tunnels. Specifically, he had not attended the NIMS ICS 300 (intermediate Incident Command Systems) and ICS 400 (advanced Incident Command Systems) training courses, which specifically address the Unified Incident Command process.

31. D.C. FEMS had a duty to respond to and evacuate WMATA's passengers. D.C. FEMS failed to discharge this assumed duty.

32. Upon information and belief, D.C. FEMS also responded to specific individuals in a negligent manner and such individuals have asserted or intend to assert claims against WMATA for injuries including those incurred as a result of negligent medical treatment by D.C. FEMS. For example, one individual has claimed that he was dropped off a stretcher by D.C. FEMS personnel and struck his head, resulting in a traumatic brain injury. Upon information and belief, other individuals have asserted or will assert claims against WMATA involving injuries caused by the negligent medical treatment of those individuals in the wake of the January 12, 2015 event.

33. It was foreseeable that WMATA would suffer from the D.C. FEMS' failure to follow the procedures in the Fire Chiefs' Agreement.

## COUNT I: INDEMNITY BASED ON DELEGATED DUTY

34. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

35. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

36. The District, through D.C. FEMS, failed to discharge its aforesaid duties to respond to WMATA's passengers in a timely and effective manner, resulting in injury and death to passengers.

37. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable to any Plaintiff in the Captioned Action, WMATA is without fault and the District through D.C. FEMS owes WMATA indemnity for all such liabilities.

## COUNT II: CONTRIBUTION BASED ON DELEGATED DUTY

38. WMATA realleges the facts set forth in Paragraphs 1-32 as if fully set forth herein.

39. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

40. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in injury and death to passengers.

41. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable to any Plaintiff in the Captioned Action, the District, through D.C. FEMS, owes WMATA contribution for all such liabilities.

## COUNT III: PARTIAL INDEMNITY BASED ON DELEGATED DUTY

42. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

43. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency

response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

44. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in injury and death to passengers. Those injuries were worse than they would have otherwise been if FEMS had responded in a timely and appropriate manner in accordance with the Fire Chiefs' Agreement.

45. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable to any Plaintiff in the Captioned Action, WMATA is without fault and the District owes WMATA partial indemnity for such liabilities stemming from the delay and/or subsequent negligence in responding to the emergency.

## COUNT IV: INDEMNITY BASED ON NEGLIGENT TRAINING

46. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

47. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

48. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in greater, and in some cases, substantially greater, harm to those passengers.

49. In particular, the District, through D.C. FEMS, failed to provide adequate training to its Incident Commanders to enable those persons to adequately and properly respond to emergencies in accordance with the NIMS directives.

50. The District, through D.C. FEMS, knew or should have known of the failure to provide adequate training to its Incident Commanders prior to January 12, 2015.

51. The failure of the District, through D.C. FEMS, to train the Incident Commander in charge on January 12, 2015, resulted in significantly delayed response to the passengers on Train 302 and resulted in injury and death to passengers.

52. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action, WMATA is without fault and the District, through D.C. FEMS, owes WMATA indemnity for such liabilities.

**COUNT V: CONTRIBUTION BASED ON NEGLIGENT TRAINING**

53. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

54. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

55. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in injury and death to passengers.

56. In particular, the District, through D.C. FEMS, failed to provide adequate training to its Incident Commanders to enable those persons to adequately and properly respond to emergencies in accordance with the NIMS directives.

57. The District, through D.C. FEMS, knew or should have known of the failure to provide adequate training prior to January 12, 2015.

58. The failure of the District, through D.C. FEMS, to train the Incident Commander in charge on January 12, 2015 resulted in significantly delayed response to the passengers on Train 302 and resulted in injury and death to passengers.

59. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action, the District, through D.C. FEMS, owes WMATA contribution for such liabilities.

**COUNT VI: PARTIAL INDEMNITY BASED ON NEGLIGENT TRAINING**

60. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

61. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

62. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in greater, and in some cases, substantially greater, harm to those passengers.

63. In particular, the District, through D.C. FEMS, failed to provide adequate training to its Incident Commanders to enable those persons to adequately and properly respond to emergencies in accordance with the NIMS directives.

64. The District, through D.C. FEMS, knew or should have known of the failure to provide adequate training prior to January 12, 2015.

65. The failure of the District, through D.C. FEMS, to train the Incident Commander in charge on January 12, 2015 resulted in delayed response to the passengers on Train 302 and resulted in injury and death to passengers.

66. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action, WMATA is without fault and the District, through D.C. FEMS, owes WMATA partial indemnity for such liabilities as arise from the delay and/or subsequent negligence in responding to the emergency.

**COUNT VII: PARTIAL INDEMNITY BASED ON SUBSEQUENT NEGLIGENCE**

67. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

68. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

69. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in greater, and in some cases, substantially greater, harm to those passengers.

70. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action not caused by the negligence of the District, through D.C. FEMS, but exacerbated or otherwise increased by the negligence of the District, through D.C. FEMS, WMATA is without fault for such exacerbated or increased injury, and the District, through D.C. FEMS, owes WMATA indemnity for such liabilities as arise from the delay and/or subsequent negligence of the District, through D.C. FEMS, in responding to the emergency.

**COUNT VIII: IMPLIED CONTRACTUAL INDEMNITY BASED ON NEGLIGENCE**

71. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

72. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action, WMATA is wholly or partially without fault and the District, through D.C. FEMS, owes WMATA indemnity for such liabilities based in the negligence of D.C. FEMS.

73. The duty of the District, through D.C. FEMS, to indemnify WMATA is implied from the nature of the special relationship between the District and WMATA, to wit, the District, through D.C. FEMS, was responsible for the emergency response duties that has given rise to Plaintiffs' claims.

74. The District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

75. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in greater, and in some cases, substantially greater, harm to those passengers.

76. Accordingly, if WMATA is found liable, then WMATA is entitled to indemnity from the District, through D.C. FEMS, because such a right is implied by the nature of the special relationship between the District, through D.C. FEMS, and WMATA, in light of the fact that the District, through D.C. FEMS, was primarily and actively responsible for the resulting injuries to Plaintiffs and owed WMATA an implied contractual duty of indemnity under the Fire Chiefs' Agreement.

### COUNT IX: EQUITABLE INDEMNITY BASED ON NEGLIGENCE

77. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

78. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on Metro Rail trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

79. The equitable duty of the District to indemnify WMATA is implied by law to prevent an unjust and unsatisfactory result.

80. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in greater, and in some cases, substantially greater, harm to those passengers.

81. Accordingly, if WMATA is found liable, then WMATA is entitled to equitable indemnity from the District, through D.C. FEMS, because WMATA is without personal fault for any injuries Plaintiffs may have suffered, and an initial determination can be made under the legal and factual pleadings submitted in this case that the negligence of another person or persons caused the injury and damages allegedly suffered by Plaintiffs.

## COUNT X: CONTRIBUTION BASED ON NEGLIGENCE

82. WMATA realleges the facts set forth in Paragraphs 1-33 as if fully set forth herein.

83. To the extent that WMATA owes a duty to WMATA's passengers to assist, rescue and/or evacuate passengers on WMATA trains in the event of a fire-emergency situation, which WMATA expressly denies, the District, through D.C. FEMS, has emergency response duties to WMATA and WMATA's passengers, as specifically set forth in, but not limited to, the Fire Chiefs' Agreement.

84. The District, through D.C. FEMS, failed to discharge its duties to respond to WMATA's passengers in a timely and effective manner, resulting in injury and death to passengers.

85. WMATA denies all liability for Plaintiffs' injuries and damages. However, to the extent that WMATA is found liable for any injury to any Plaintiff in the Captioned Action, the District, through D.C. FEMS, owes WMATA contribution for such liabilities based in the negligence of the District, through D.C. FEMS.

**WHEREFORE**, for the foregoing reasons, WMATA respectfully requests that judgment be entered as follows:

A.  Awarding WMATA complete or partial indemnity for any liabilities incurred to any Plaintiff in the Captioned Action; and/or

B.  Awarding WMATA contribution for any liabilities incurred to any Plaintiff in the Captioned Action.

### JURY DEMAND

WMATA demands a trial by jury of all claims so triable.

Respectfully submitted,

**BONNER KIERNAN TREBACH & CROCIATA, LLP**

*/s/ Mana Kinoshita*
Barry D. Trebach, Esquire (#358957)
Joseph J. Bottiglieri, Esquire (#418523)
William H. White Jr., Esquire (#461341)
Nimalan Amirthalingam, Esquire (#485117)
Mana Kinoshita, Esquire (#1022191)
1233 20th Street, NW, Suite 800
Washington, D.C. 20036
T: (202) 712-7000
F: (202) 712-7100
btrebach@bonnerkiernan.com
jbottiglieri@bonnerkiernan.com
wwhite@bonnerkiernan.com
namirthalingam@bonnerkiernan.com
mkinoshita@bonnerkiernan.com
*Counsel for Defendant WMATA*

Kathleen A. Carey, Esquire (#357990)
Brendan H. Chandonnet, Esquire (#986719)

>600 5th Street, N.W.
>Washington, D.C. 20001
>T: (202) 962-1496
>kcarey@wmata.com
>bchandonnet@wmata.com
>*Counsel for Defendant WMATA*

## **CERTIFICATE OF SERVICE**

I certify that on January 9, 2017 a copy of the foregoing was served *via* the court's electronic filing system on all counsel of record and *via* first-class mail, postage prepaid, upon:

Lauren Hawkins
c/o Thelma Hawkins
3957 Blaine Street, N.W.
Washington, D.C. 20019
*Pro-Se Plaintiff*

                                      */s/ Mana Kinoshita*
                                      Mana Kinoshita